# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JOSEPH RIAD,

    Plaintiff,

    v.

DEY EQUIINE VETERINARIANS, P.A. &
STEVEN DEY,

    Defendants.

Civil Action No. 22-6927 (RK) (JBD)

**OPINION**

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court upon a Motion for Judgment on the Pleadings filed by Dey Equine Veterinarians, P.A. and Stephen Dey (collectively, "Defendants")[1] seeking judgment against Plaintiff Joseph Riad ("Plaintiff"). The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Motion for Judgment on the Pleadings is **GRANTED** in part and **DENIED** in part.

## I.     BACKGROUND

### A.     PROCEDURAL HISTORY

    On May 6, 2022, Plaintiff brought this action in the Eastern District of Pennsylvania. (Compl., ECF No. 1). On September 29, 2022, Defendants filed an Answer and on October 11, 2022, Defendants moved for judgment on the pleadings. (ECF Nos. 20, 23.) That same day, the

---

[1] Plaintiff spells Defendant Dey's name "Steven." However, Defendants represent that this spelling is incorrect and that Defendant Dey's name is spelled "Stephen." (*See, e.g.*, ECF No. 38 at 1). Therefore, the Court refers to Defendant Dey using Defendants' spelling.

Honorable Timothy J. Savage ordered Plaintiff to file an Amended Complaint and ordered each party to submit a memorandum of law by October 25, 2022 showing cause why the action should not be transferred to this District. (ECF No. 25.) On October 25, 2022, Plaintiff filed an Amended Complaint, and the next day, Judge Savage denied Defendants' Motion for Judgment on the Pleadings. (ECF Nos. 27, 28.) After the parties failed to submit memoranda regarding transfer of this case, the case was transferred to this District where Defendants are located and the operative facts giving rise to the Plaintiff's claim occurred. (ECF No. 29.)

After the case was transferred, Defendants filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 31.) On December 12, 2022, Plaintiffs submitted a "Proposed" Second Amended Complaint. (ECF No. 35.) Defendants answered the Second Amended Complaint (ECF No. 37), and on March 9, 2023, filed a Motion for Judgment on the Pleadings based on the Second Amended Complaint, (ECF No. 38). On April 4, 2023, Plaintiff filed a brief in opposition. (ECF No. 43).[2] On June 15, 2023, the Court found that Plaintiff's Second Amended Complaint serves as the operative pleading in this matter and denied Defendants' Motion to Dismiss, filed prior to the filing of Plaintiffs' Second Amended Complaint, as moot. (ECF No. 57.) On June 22, 2023, Defendants filed a Reply brief in support of their Motion for Judgment on the Pleadings. (ECF No. 58.)[3] Currently pending before the Court is Defendants' Motion for Judgment on the Pleadings on each of Plaintiff's claims. (ECF No. 38.)

---

[2] Defendants moved to strike Plaintiff's brief as having been filed one hour late. (ECF No. 44; *see also* ECF No. 48.) The parties then filed a flurry of letters on the docket pertaining to Defendants' Motion. (ECF Nos. 48–53.) On June 15, 2023, the Court denied Defendants' Motion to Strike. (ECF No. 57.)

[3] On July 5, 2023, the parties filed a Stipulation in which they purported to agree that Defendants' Reply brief should be sealed. (ECF No. 58.) They also purported to stipulate that Plaintiff had forty-eight (48) hours from execution of the Stipulation to "file a letter response." (*Id.*) July 7, 2023, Plaintiff submitted a response in opposition to Defendants' Reply Brief. (ECF No. 60.) However, on July 10, 2023, the Court declined to execute the parties' Stipulation as it was both procedurally and substantively deficient. (ECF No. 61.) Moreover, the Court notes that sur-replies are not permitted without leave of Court. Rule 7.19(d)(6) Accordingly, the Court will not consider Plaintiff's response to Defendants' Reply.

## B.   CONCERNS WITH THIS LITIGATION

At the outset, the Court points out that it finds aspects of this litigation somewhat confusing. The Court will describe the allegations contained in Plaintiff's Second Amended Complaint in further detail hereinafter. However, by way of brief summary, Plaintiff owns fourteen (14) standardbred horses. Plaintiff retained two horse trainers to care for his horses who, in turn, hired Defendants to provide veterinary care to the horses. Plaintiff alleges that Defendants failed to provide competent veterinary care and brings a number of other claims related to Defendants' purportedly unauthorized billing of Plaintiff for veterinary services.

The Court notes that, at points in Plaintiff's Second Amended Complaint, Plaintiff appears to be stating claims against Adams and Dellavecchia, the trainers with whom Plaintiff was purportedly in a contractual relationship. Nonetheless, Plaintiff does not name Adams or Dellavecchia as defendants in this action and attempts to bring all of his claims against Defendants—the veterinarian who the trainers allegedly hired to provide care to Plaintiff's horses. Plaintiff does not allege that he hired or authorized the selection of Defendants as the veterinary provider for the horses or was even cognizant that Defendants were providing veterinary services, and despite the thirty-four (34) pages and one hundred and thirty-seven (137) paragraphs in the Second Amended Complaint, Plaintiff's allegations against Defendants are, at times, spartan, vague, and confusing.[4]

_____

[4] On another issue, the Court notes that it is unclear how much, if any, of this litigation Plaintiff has undertaken *pro se*, and the parties vigorously contest same. Plaintiff argues that he has been a *pro se* litigant at "nearly all relevant stages of this litigation." (ECF No. 43 at 39.) He claims that he was *pro se* when he commenced this action before retaining counsel, Mikala L. Rector, Esq., who was licensed to practice in the Eastern District of Pennsylvania. (*Id.*) According to Plaintiff, when this case was transferred to this District, he also filed his Second Amended Complaint *pro se* before retaining his current counsel, Ibrahim Ahmed, who is licensed to practice in this District. (*Id.*) However, as Defendants point out, the Second Amended Complaint bears Ms.

FACTUAL BACKGROUND

As introduced briefly above, this case arises from an agreement between Plaintiff and two horse trainers, Katricia Adams and Patrick Dellavecchia. (Second Amended Complaint, ("SAC"), ECF No. 35 ¶¶ 18–19.) Plaintiff is the owner of fourteen (14) horses: Spy Booth, Boom City, Church Sout, Year of the Bride, Zinny Mach, Major Deception, Enough Sun, Craft Brew Lindy, Mass Flow, McBeantown, Protect the Money, Sophie's Candy, Sweet Talker, and Tact Tate N. (*Id.* ¶ 14.) Plaintiff's horses are standardbred horses that participate in races in Pennsylvania, New Jersey, New York, Maryland, and Ohio. (*Id.* ¶¶ 15–17.) Plaintiff suffers from a permanent physical disability and relies on professional trainers to provide day-to-day care of his horses. (*Id.* at 29).[5]

On or about August 2021, Plaintiff purportedly entered into a verbal agreement with Adams and Dellavecchia for the care, treatment, and maintenance of Plaintiff's horses. (*Id.* ¶ 18.) Pursuant to the agreement, Adams and Dellavecchia agreed to, *inter alia*, care for the horses, including feed, water, stalls and bedding, grooms, shoes, and competent veterinary and dental care. (*Id.* ¶ 22.) They also agreed to pay for the expenses associated with the horses' care. (*Id.* ¶ 22.)

During the course of the trainers' care for the horses, they hired Defendants to provide veterinary services. (*Id.* ¶ 65.) According to Plaintiff, Defendants assert that from August 2021 until December 2021, they provided ongoing veterinary care to the horses. (*Id.* ¶ 13). However, in December 2021, ten (10) of the horses were returned to Plaintiff, and upon inspection of the horses, Plaintiff discovered that, while under the claimed veterinary care of Defendants:

> (a) Each racehorse "lost hundreds of pounds" due to severe neglect and malnourishment;

---

Rector's signature, Plaintiff and Ms. Rector appear to share an address, and Ms. Rector has represented Plaintiff on at least nine (9) previous occasions. (ECF No. 58 at 11–12.)
[5] In Plaintiff's Second Amended Complaint, for some reason, the paragraph numbers restart for each of Plaintiff's causes of action. Therefore, the Court's citations to these portions of the Second Amended Complaint are to the document's page numbers, rather than paragraph numbers.

(b) The [horses] were so severely dehydrated that each drank five to ten gallons of water upon arriving at Plaintiff's Ranch;

(c) The [horses] were so severely starved that they shook the 33-stall barn with the pounding of their hooves as grain and hay was being provided to each of them;

(d) At least six of the ten [horses] had severe skin disease (bacterial/fungal), "rain rot" and open sores;

(e) The [horses] looked emaciated, and their ribs could be seen through their winter coats[;]

(f) Zinny Mach's hoof had a gaping hole / in jury [sic] – the injury was not new.

(*Id.* ¶¶ 27–28.) After Plaintiff discovered the injuries to the horses, Plaintiff took the horses to Doctor Tyra Crowley of Stillmeadow Equine Veterinary Service. (*Id.* ¶ 30.) Dr. Crowley performed examinations and testing on the horses and confirmed that they had "suffered severe neglect and/or animal abuse."[6] (*Id.* ¶¶ 33, 36.)

On or about December 7, 2021, Adams and Dellavecchia "secreted away" the four (4) remaining horses (Spy Booth, Mass Flow, Church Sout, and Year of the Bride) to an undisclosed location. (*Id.* ¶ 38.) Adams and Dellavecchia "attempted to use the [horses] to extort an additional $60,000.00 payment from Plaintiff." (*Id.* ¶ 39.) Despite Plaintiff's repeated demands, the remaining horses were not returned to Plaintiff until on or about January 13, 2022. (*Id.*) Upon inspection of the remaining horses, Plaintiff discovered that these horses had also suffered serious injuries: each horse had lost hundreds of pounds and Spy Booth "could not walk as he was '5/5 lame' from injury to his hind leg." (*Id.* ¶¶ 41–43.) Plaintiff took the horses to see Dr. Crowley who

---

[6] Plaintiff attached Dr. Crowley's clinical summaries of her examinations to the Second Amended Complaint. (SAC, Ex. 1.) In deciding motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts may consider exhibits attached to the complaint. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413 n.2 (3d Cir. 2006), *as amended* (June 14, 2006).

performed examinations and testing and confirmed that these horses had also been returned in poor condition.[7]

Plaintiff alleges that the injuries to each of the horses were "obvious" and were "not new," and that their condition, as confirmed by Dr. Crowley, was "that of animals who had been [] denied proper care and veterinary treatment and suffered severe malnutrition, neglect and/or animal abuse." (*Id.* ¶¶ 47–48, 50.) Plaintiff alleges that Defendants owed a duty of care in providing veterinary services and breached that duty by failing to exercise reasonable care and by failing to provide any and/or competent veterinary care. (*Id.* ¶¶ 34–35, 51.) Plaintiff alleges that Defendants did not administer antibiotics, anti-fungal medication, or other treatment for the horses' "rain rot" and skin conditions; failed to treat the horses' malnutrition and weight loss; failed to order blood work; did not competently treat the hole in Zinny Mach's hoof; and did not treat the injury to Spy Booth's leg. (*Id.* ¶¶ 53–56.) Furthermore, Defendants did not notify anyone or otherwise report the deteriorating medical conditions of the horses. (*Id.* ¶ 57.) To the contrary, Defendant Dey falsely represented to Plaintiff and to Dr. Crowley that the horses were in good condition and not in need of veterinary care. (*Id.* ¶ 59.) Plaintiff alleges that, as a result of Defendant's actions and inactions, the horses suffered serious and permanent injuries, which has caused Plaintiff to lose earnings, devalued the horses, and forced Plaintiff to incur costs associated with providing necessary care and rehabilitation to the horses. (*Id.* ¶¶ 60–61.)

Plaintiff alleges that the terms of the supposed verbal agreement with non-parties Adams and Dellavecchia required the trainers to pay for the costs associated with veterinary services provided to Plaintiff's horses and that he did not enter into any agreement with Defendants to "pay for or otherwise be financially responsible" for any veterinary services, did not consent or

---

[7] Dr. Crowley's clinical summaries of the horses returned in January are also attached to the Second Amended Complaint. (SAC, Ex. 2.)

authorize the trainers to incur charges in his name or on his behalf, and did not agree to be responsible for the trainers' financial obligations. (*Id.* ¶ 62.) However, when Plaintiff demanded the return of the horses, Defendants "conveniently recalled the existence of $70,000.00 in alleged bills" for the provision of veterinary care. (*Id.* ¶ 69.)[8] Plaintiff alleges that Defendants conspired with non-parties Adams and Dellavecchia to "run-up unnecessary and unauthorized bills/invoices for financial gain" even though Defendants knew that payment for veterinary services was not Plaintiff's obligation and had not been authorized by Plaintiff. (*Id.* ¶¶ 71–72.) On April 30, 2022, Defendants, through their attorney, mailed a letter and invoice demanding payment from Plaintiff and representing that they intended to file a claim against Plaintiff pertaining to same. (*Id.* ¶¶ 73–76.)

Shortly thereafter, Plaintiff brought suit against Defendants. (ECF No. 1.) In Plaintiff's Second Amended Complaint, Plaintiff brings six (6) claims against Defendants related to their alleged neglect of the horses and improper billing: (1) "negligence / recklessness / gross negligence / malpractice," (2) "negligence / recklessness / gross negligence / fraud," (3) "consumer fraud," (4) "fraud / misrepresentation," (5) "defamation / commercial disparagement / false light," and (6) "tortious interference." (ECF No. 35 at 17–33.) After answering Plaintiff's Second Amended Complaint, Defendants moved for judgment on the pleadings on each of Plaintiff's claims. (ECF No. 38.)

---

[8] The Court notes that, while at one point, Plaintiff alleges that *the trainers* demanded an additional $60,000 from Plaintiff to secure the return of his horses, (SAC ¶ 39), in numerous other places in the Second Amended Complaint, Plaintiff alleges that *Defendants* demanded $69,981.00, (*id.* at 19, 21, 25, 27), $70,000, (*id.* ¶ 70), "nearly $70,000," (*id.* ¶¶ 73, 79; *id.* at 23), or "in or about $70,000, (*id.* at 26). As Plaintiff has not named the trainers as defendants in this action, the Court is only considering Plaintiff's allegation that Defendants demanded approximately $70,000 in relation to their alleged veterinary services.

## II.   **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The pleadings are 'closed' after the complaint and answer are filed, along with any reply to additional claims asserted in the answer." *Horizon Healthcare Servs., Inc. v. Allied Nat. Inc.*, 2007 WL 1101435, at *3 (D.N.J. Apr. 10, 2007). In reviewing a motion for judgment on the pleadings, courts apply the same standards as when reviewing a motion to dismiss under Federal Rule of Civil Procedure (12)(b)(6). *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991) (citations omitted); *see also Muhammad v. Sarkos*, 2014 WL 4418059, at *1 (D.N.J. Sept. 8, 2014).

Under Federal Rule of Civil Procedure (12)(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 406 (D.N.J. 2018). As such, "[a] complaint should not be dismissed unless it appears beyond doubt that 'the facts alleged in the complaint, even if true, fail to support the claim.'" *Syncsort Inc. v. Sequential Software, Inc.*, 50 F.Supp.2d 318, 324 (D.N.J. 1999). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers labels and conclusions or a formulistic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further

factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted). As with a motion to dismiss, claims dismissed pursuant to a motion for judgment on the pleadings may be dismissed with or without prejudice. *See, e.g., In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d at 427.

## III.   DISCUSSION

Defendants move for judgment on the pleadings on each of Plaintiff's six (6) claims. The Court will address the viability of each of Plaintiff's claims in turn, starting with Plaintiff's negligence claim for medical malpractice found in Count One.

### A.  Malpractice Claim

In Count One, Plaintiff alleges that Defendants owed a duty to exercise reasonable care in connection with the veterinary services and treatment provided to Plaintiff's horses. (SAC, at 17.) Plaintiff alleges that Defendants breached "the standard of veterinary care within the community and that a reasonable veterinarian would provide" by failing to timely diagnose and treat the horses' injuries and by falsely representing that the horses were in good condition. (*Id.* at 17–19.) Plaintiff also alleges that Defendants' administration and prescription of drugs and substances listed on Defendants' invoices fell below the standard of reasonable veterinary care. (*Id.* at 18). As a result, the horses suffered serious and permanent injuries, malnutrition, neglect, and animal abuse which have caused Plaintiff to lose earnings associated with the horses and to expend resources providing them necessary veterinary care. (*Id.* at 19.)

Defendants argue that Plaintiff's first count should be dismissed for two reasons: (1) Plaintiff "seems to be alleging the standard of care for veterinarians which would be relative to his malpractice allegation, but not the claim for negligence;" and (2) Plaintiff's malpractice claim must fail because Plaintiff does not sufficiently plead proximate cause.[9] (ECF No. 38 at 8, 10.) At the

---

[9] Defendants do not contest Plaintiff's medical malpractice claim on any other grounds, including that Defendants did not breach the applicable standard of care. (*See* ECF No. 38 at 9–11.)

outset, the Court agrees with Defendants that Plaintiff's first claim sounds in malpractice, rather than ordinary negligence. However, that conclusion alone does not require dismissal of Count One. Medical malpractice is merely a "subset of a negligence cause of action," in which a plaintiff must establish that the defendant was subject to an applicable medical standard of care. *Hearns v. Johnson*, No. 16-3284, 2016 WL 4690386, at \*6 (D.N.J. Sept. 6, 2016). Thus, the question before the Court is whether Plaintiff has made out a *prima facie* claim for malpractice.

Neither party cited any case law that provides the legal standard for *veterinary* malpractice in New Jersey, and the Court is aware of none.[10] Therefore, the Court considers the approach taken by other states within this Circuit. Courts in Pennsylvania apply the same standard for veterinary malpractice cases as for ordinary medical malpractice cases. *See, e.g.*, *Mires v. Evans*, No. 82-4436, 1986 WL 8117, at \*11 (E.D. Pa. July 21, 1986); *Durkin v. Equine Clinics, Inc.*, 313 Pa. Super. 75, 79 (1983). Courts in Delaware have not articulated a standard for veterinary liability in malpractice cases, but one court appears to presume the existence of a veterinary malpractice cause of action. See *Ferrell v. Wilmington Animal Hosp.*, *P.A.*, No. 93C-05-237, 1994 WL 45438, at \*1 (Del. Super. Ct. Jan. 19, 1994).

Therefore, the Court will turn to New Jersey's medical malpractice standard to determine whether Plaintiff has stated a malpractice claim against Defendants relating to their veterinary services. In New Jersey, a plaintiff in a medical malpractice action must allege "(1) the applicable standard of care; (2) a deviation from that standard of care; and (3) that the deviation proximately caused the injury." *Gardner v. Pawliw*, 150 N.J. 359, 375 (1997); *see also Zuidema v. Pedicano*,

---

[10] Indeed, in the American Law Reports' article discussing veterinary malpractice cases from across the country there are no cases arising in New Jersey. *See* 71 A.L.R.4th 811 (Originally published in 1989). The Court notes, however, that Defendants do not contest whether a claim for veterinary malpractice can be brought in New Jersey and appear to assume same. (*See* ECF No. 38 at 9.) Having failed to establish that no such cause of action exists, the Court will not dismiss Plaintiff's veterinary malpractice claim on this basis.

373 N.J. Super. 135, 145 (App. Div. 2004) (a medical malpractice claim must allege "the improper performance of a professional service that deviated from the acceptable standard of care"). The parties agree in their briefing that Plaintiff's claims center on Defendants' alleged failure to diagnose and treat the horses' preexisting conditions. (ECF No. 38 at 10; ECF No 43 at 19.) Thus, the Court will focus on the standard used in New Jersey to establish proximate cause in malpractice cases involving preexisting conditions.

Courts in New Jersey have explained that "the causation element . . . is the most complex [as] there are different tests for determining proximate cause." *Verdicchio v. Ricca*, 179 N.J. 1, 23 (2004). While in a routine tort claim, a plaintiff must allege that the injury complained of would not have occurred "but for" the negligent conduct of the defendant, *Gardner*, 150 N.J. at 377, courts in New Jersey have held that the "but for" test "has its limitations in situations where two or more forces operate to bring about a certain result and any one of them operating alone would be sufficient." *Verdicchio*, 179 N.J. at 23 (quotation marks and citation omitted). Indeed, courts have cautioned against the "potentially insurmountable obstacle" of applying the "but for" standard in cases involving preexisting conditions. *Id.* at 24; *see also Gardner*, 150 N.J. at 377 ("[P]roximate cause can be difficult to prove in the context of harm that results from a combination of a plaintiff's preexistent condition and a defendant's negligent discharge of a duty related to that condition, because the preexistent condition itself serves as a 'but for' cause of the ultimate injury." (citation omitted)). Thus, for cases involving preexisting conditions, New Jersey has adopted a "modified standard" called the "substantial factor" test. *Verdicchio*, 179 N.J. at 23. The substantial factor test asks "whether the defendant's deviation from standard medical practice increased a

patient's risk of harm or diminished a patient's chance of survival and whether such increased risk was a substantial factor in producing the ultimate harm." *Gardner*, 150 N.J. at 376.[11]

The Court acknowledges that this is a close call but finds that Plaintiff sufficiently pled Count One to survive Defendants' Motion for Judgment on the Pleadings. Namely, Plaintiff has pled that Defendants' deviation from the standard of reasonable veterinary care was a substantial factor in producing the horses' injuries. Plaintiff alleges that Defendants failed to administer antibiotics, anti-fungal medication, or other treatment for the horses' skin conditions, failed to treat the horses' malnutrition and weight loss, failed to order bloodwork, and failed to treat a hoof injury to Zinny Mach and a leg injury to Spy Booth. Plaintiff alleges that Dr. Crowley, who examined the horses after they were returned from Defendants' alleged care, observed that the horses had been returned in poor condition: each of the horses was underweight and each horse except one was in need of shoeing. (SAC, Ex. 1 at *2–10, Ex. 2 at *2–5.) Dr. Crowley also identified the following additional and specific injuries: "hair loss, dry skin, rain rot[,] & open sores," hoof defects, burns, suspected gastric ulcers, soreness and sensitivity, unshod feet, scrapes, elevated muscle enzymes and liver values, lameness, and a broken toe. (SAC, Ex. 1 at *2–10; SAC, Ex. 2 at *2–5).

Critically for the proximate cause inquiry, Dr. Crowley stated that the horses' "significant weight loss and poor conditioning are likely *a result of* lack of providing proper nutrition and care." (SAC, Ex. 1 at *2, 3 (emphasis added)). She also "[s]trongly recommend[ed] these horses return

---

[11] The Court notes that, in their motion, Defendants fail to provide any legal standard for proximate cause. Rather, Defendants argue, without citation to legal authority, that Plaintiff "fails to allege proximate cause, i.e. how the alleged deviation from the standard of care—failing to treat preexisting conditions—actually caused the 'serious and permanent injuries' to the [h]orses." (ECF No. 38 at 10.) The standard in New Jersey is not whether Defendants' acts or omissions "actually caused" the horses' injuries—rather, as noted above, the standard is whether Defendants' negligence increased the horses' risk of harm and whether that risk was a substantial factor in the horses' injuries. Defendants attempt to clarify their argument in their Reply brief where they, for the first time, cite the proper standard for proximate cause. (ECF No. 58 at 3.)

to owner's care so they can be properly fed & managed as the condition of the horses [she] examined today has deteriorated significantly over a short period of time." (*Id.* at *3). The Court finds that Plaintiff has sufficiently alleged that Defendants' failure to diagnose and treat the horses' injuries increased the risk of harm to the horses, which was a substantial factor in producing their ultimately serious and permanent injuries.[12] Therefore, Defendants' Motion is **DENIED** as to Count One.

### B. Fraud Claims

In Counts Two and Four, Plaintiff attempts to state claims for fraud. The Court will first address the allegations in Count Two.

#### 1. *Fraud Claim in Count Two*

In this count, entitled "negligence / recklessness / gross negligence / fraud," Plaintiff alleges that Defendants owed a duty of care in connection with invoicing and billing, including billing the correct party, billing only for authorized services, charges, and amounts, communicating with Plaintiff, verifying customer identities, only allowing authorized persons to incur charges, and keeping Plaintiff reasonably informed as to the condition of the horses. (SAC, at 20.) Plaintiff alleges that Defendants violated this duty "when [they] charged Plaintiff the sum of $69,981.00." (*Id.* at 21.)

---

[12] Defendants also argue in their Reply brief, again without citation to legal authority, that Plaintiff's malpractice claim must fail because a "failure to treat or diagnose preexisting injuries must result in a *new injury*." (ECF No. 58 (emphasis in original)). Claims pertaining to failure to diagnose or treat preexisting injuries impose no such requirement. Indeed, the District of New Jersey, applying New Jersey malpractice law, has noted:

> Where a claim . . . is based on the failure to diagnose or treat a pre-existing condition . . . the injury is the *development* of the problem into a more serious condition which poses greater danger to the patient or which requires more extensive treatment.

*Pagliaroli v. New Jersey Dep't of Corr.*, No. 18-12412, 2023 WL 1361094, at *6 (D.N.J. Jan. 31, 2023) (quoting *Hughes v. United States*, 263 F.3d 272, 276–77 (3d Cir. 2001) (emphasis in original)).

Defendants argue that Count Two should be dismissed for two reasons: (1) Plaintiff has failed to state a claim for fraud, and (2) Plaintiff suffered no damages because Plaintiff did not pay the alleged bill. (ECF No. 38 at 9, 12.) To the extent that Plaintiff is attempting to establish a claim for fraud in Count Two, the Court agrees that Plaintiff's claim fails.

In order to state a claim for fraud, a plaintiff must establish the following five elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Hous. Auth. of City of Bayonne v. Hanna*, No. A-0788-10T2, 2011 WL 5828521, at *3 (N.J. Super. Ct. App. Div. Nov. 21, 2011) (quoting *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)). Moreover, for allegations sounding in fraud, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard: a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).[13] A plaintiff must plead fraud with sufficient particularity to put the defendant on notice of the "precise misconduct with which [he is] charged." *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004), *abrogated in part on other grounds by Twombly*, 550 U.S. at 557. "To satisfy this standard, the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). Rule 9(b) requires "at a minimum, that the plaintiff identify the speaker of allegedly fraudulent statements." *Id.* (quoting *Klein v. General Nutrition Co., Inc.*, 186 F.3d 338, 345 (3d Cir. 1999)).

---

[13] Although Plaintiff's claims arise under New Jersey state law, the Court must apply federal procedural law, including the pleading requirements found in the Federal Rules of Civil Procedure. *See Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)).

The Court finds that Plaintiff has not alleged fraud with the level of precision required under the Federal Rules. While Plaintiff has alleged that (1) Defendants represented that Plaintiff owed Defendants $69,981.00 for veterinary services and (2) Defendants "knew that payment for veterinary services was not the obligation of Plaintiff and had not been authorized by Plaintiff," Plaintiff has not alleged that Defendants knew Plaintiff would rely upon their representations regarding Plaintiff's debt. Rather, Plaintiff only alleges reliance pertaining to Plaintiff's expectation that the horses would receive proper care. Plaintiff claims only that Defendants knew that Plaintiff would rely on them "to provide proper treatment for any injuries, malnutrition[,] or other medical condition" and "to keep Plaintiff reasonably informed about the condition of the horses . . . ." (*Id.* at 13.) However, the basis of Plaintiff's fraud claim is not Defendants' allegedly incompetent veterinary treatment—it is Defendants' allegedly improper and unauthorized billing of $69,981.00 for their veterinary services. Plaintiff fails to allege that he reasonably relied upon Defendants' representations regarding the alleged debt or that he suffered damages as a result. By contrast, Plaintiff alleges that he objected to Defendants' bill, and indeed, never paid same.

To the extent that Plaintiff is attempting to, in the alternative, plead a claim for ordinary negligence based on Defendants' improper billing, that claim also fails. To sustain a cause of action for negligence, a plaintiff must establish four elements: "'(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'" *Polzo v. Cnty. of Essex*, 196 N.J. 569, 584 (2008) (quotation marks and citations omitted). As noted above, Defendants argue that Plaintiff suffered no damages because Plaintiff did not pay the alleged bill. (ECF No. 38 at 9.) Plaintiff responds that Defendants' failure to exercise reasonable care with respect to billing indeed caused damages "including, but not limited to diminution of value of the [ho]rses, loss of earnings and/or opportunities, cost of veterinary treatment and medications and legal fees." (ECF No. 43 at 16.)

While these damages may be cognizable for Plaintiff's veterinary malpractice claim, they do not flow from Defendants' alleged attempt to charge Plaintiff $69,981.00: an amount Plaintiff concedes he never paid. Therefore, Defendants' Motion is **GRANTED** without prejudice as to Count Two.

### 2. *Fraud Claim in Count Four*

Plaintiff attempts to state another claim for fraud in Count Four of the Second Amended Complaint. In this count, entitled "fraud / misrepresentation," Plaintiff alleges that Defendants made two false representations: (1) "Plaintiff owes a debt in or about $70,000.00" and (2) the horses "were in good condition and not in need of medical / veterinary care." (SAC, at 26.) Plaintiff also alleges that Defendants "concealed and/or materially omitted the condition of the horses," and as a direct and proximate result of Defendants' misrepresentations and omissions, the horses were entered into races rather than receiving much-needed veterinary treatment, causing the horses to suffer injuries and be devalued and causing Plaintiff to incur costs for veterinary care and to lose earnings. (*Id.* at 26–27.) With respect to the first alleged misrepresentation (that Plaintiff owed a $70,000 debt), Defendants argue that Plaintiff's fraud claim fails because Plaintiff cannot plead reasonable reliance and resulting damages. (ECF No. 38 at 15.) The Court agrees. As discussed above, Plaintiff does not allege that he relied on the invoice provided by Defendants; instead, Plaintiff alleges that he objected to the invoice, did not pay the amount allegedly owed, and commenced this action.

Turning to the second alleged misrepresentation (that the horses were in good condition), Defendants argue that Plaintiff fails to allege Defendants had knowledge of the false statement and an intent that Plaintiff rely on same. (ECF No. 38 at 16.) The Court notes that Plaintiff does allege that the horses' injuries were "obvious," which suggests that Defendants at least *should have*

*known* the horses were not in good condition. (SAC, ¶ 46; *see also* ECF No. 43 at 26–27.)
However, this allegation does not meet Rule 9(b)'s "stringent" pleading standard for fraud claims.
*Frederico*, 507 F.3d at 200. Moreover, Plaintiff does not allege with specificity when or where
Defendants' alleged statement took place. Rather, Plaintiff alleges that Defendant Dey made this
statement to Plaintiff "and/or" Dr. Crowley. (SAC, at ¶ 59.) Plaintiff's Second Amended
Complaint also does not clearly identify the speaker of the allegedly fraudulent misrepresentation.
At some points, Plaintiff alleges that Defendant Dey made this misrepresentation, (*id.* at ¶¶ 59,
85), but elsewhere Plaintiff alleges generically that "Defendants" made the misrepresentation, (*id.*
at 18, 26). The Court finds that Plaintiff's allegations do not meet Rule 9(b)'s requirements, and
accordingly, Defendant's Motion is **GRANTED** without prejudice as to Count Four.

### C.   Consumer Fraud Claim

In Count Three, Plaintiff alleges that Defendants violated the New Jersey Consumer Fraud
Act ("NJCFA"). The NJCFA prohibits, *inter alia*, "any unconscionable commercial practice,
deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment,
suppression, or omission of any material fact with intent that others rely upon [same]" in
connection with the sale or advertisement of merchandise. N.J.S.A. 56:8-2. Under the NJCFA,
merchandise includes "services." *Id.* 56:8-1(c). Plaintiff alleges that Defendants violated the
NJCFA by "falsely claiming that Plaintiff owed nearly $70,000"; "falsely representing that they
provided veterinary care to the [h]orses"; "providing unauthorized care" to the horses; and "failing
to notify any racing authority or the owner" about the condition of the horses. (SAC, at 23–24.)

Defendants argue that Plaintiffs' NJCFA claim fails because Defendants are exempt from
the NJCFA based on the "learned professionals exception." (ECF No. 38.) At the outset, the Court
notes that Plaintiff did not respond to Defendants' arguments regarding Plaintiff's consumer fraud
claims. By failing to respond to Defendants' arguments, Plaintiff has conceded them, and Count

Three may be dismissed on that basis alone. *See, e.g.*, *Millner v. Bayada Nurses, Inc.*, No. 05-3164, 2006 WL 231993, at *2 (D.N.J. Jan. 30, 2006); *Noramco LLC v. Dishman USA, Inc.*, No. 21-1696, 2022 WL 2817876, at *5 (D. Del. July 19, 2022). However, even if the Court were to assess the merits of Defendants' arguments, the Court would find that Plaintiff's NJCFA claim must be dismissed.

Courts in New Jersey have determined that services provided by "learned professionals" fall outside the scope of the NJCFA. *Macedo v. Dello Russo*, 178 N.J. 340, 346 (2004*); Lee v. First Union Nat. Bank*, 199 N.J. 251, 263 (2009). Those who have been exempted from NJCFA claims include physicians, lawyers, dentists, accountants, and engineers. *Id.* (citation omitted). This exception has also been extended to ambulance service providers, nursing homes, insurance brokers, and hospitals. *See Atl. Ambulance Corp. v. Cullum*, 451 N.J. Super. 247, 255 (App. Div. 2017) (collecting cases). In deciding whether the learned professional exception applies, courts in New Jersey ask whether the professional group is subject to "testing, licensing, regulations, and penalties through other legislative provisions." *Id.* (citation omitted) (applying the exception to ambulance service providers because they "are regulated by the Department of Health and reasoning that there is "no purpose to a requirement that [certain] services be within the purview of the [NJCFA] when those same services fall within the purview of the Department of Health").

Neither party points the Court to a case in New Jersey considering whether veterinarians constitute learned professionals within the meaning of the NJCFA, and the Court is aware of none. However, the Court concludes that veterinarians are exempt from NJCFA claims. As Defendants point out, veterinarians are licensed and regulated by the New Jersey State Board of Veterinary Examiners, which is part of the Division of Consumer Affairs within the Department of Law and Public Safety. The board oversees the licensure of veterinaries, supervises the practice of

veterinary medicine, ensures that veterinary medicine is performed in a manner consistent with medical and ethical standards, and adjudicates complaints brought against veterinarians by consumers. *See* State Board of Veterinary Medical Examiners, New Jersey Division of Consumer Affairs, njconsumeraffairs.gov/vet (last modified October 30, 2023, 11:31 AM). Based on the Department's thorough regulation of veterinary services, the Court concludes that the learned professional exception precludes consumer fraud claims brought against veterinarians. Accordingly, Defendants' Motion is **GRANTED** with prejudice as to Count Three.

### D.  Claims for Defamation, Commercial Disparagement, and False Light

In Count Five, Plaintiff brings three alternative tort claims pertaining to allegedly false and defamatory statements made by Defendants about Plaintiff. Plaintiff alleges that Defendants made the following false statements about Plaintiff to professional horse trainer, Jordan Miller: (1) Mr. Miller should not train Plaintiff's horses; (2) Plaintiff was in debt to Defendants and was "a debtor"; and (3) Plaintiff does not pay his bills because Plaintiff "is broke." (SAC, at 28.) Plaintiff alleges that Defendants also made the following similar statements about Plaintiff to another horse trainer, Michael Hall: (1) Mr. Hall "should stay away from [Plaintiff]"; (2) Plaintiff was in debt to Defendants and was "a debtor"; and (3) Plaintiff does not pay his bills because Plaintiff "has no money." (*Id.*) Plaintiff further alleges that Defendants knew at the time that they made these statements that Plaintiff is physically disabled and is reliant on trainers to provide care for his horses. (*Id.*) Plaintiff also alleges that Defendants made similar statements to veterinarian, Dr. Blauner, and to a race judge at Harrah's Casino (a racetrack at which Plaintiff's horses participate in races). (*Id.* at 30.) Plaintiff alleges that each of these statements was false because: (1) Plaintiff is not a debtor; (2) Plaintiff is not broke; (3) Plaintiff has money; and (4) Plaintiff is not in debt to Defendants. (*Id.*) Plaintiff alleged that each of these statements was intended to defame Plaintiff,

damage his reputation, lower him in the estimation of the standardbred racing community, and deter third parties from dealing with him. (*Id.* at 29, 31.)

First, Defendants argue, without citation to legal authority, that Plaintiff's claims for defamation, commercial disparagement, and false light should all be dismissed because Plaintiff fails to allege that the statements "were published anywhere." (ECF No. 38 at 17.) As Defendants seem to concede that at least one of the alleged statements was communicated to a third party, (*see* ECF No. 38 at 17), Defendants appear to be arguing that these statements were not published because they were not published *in writing*. Defendants misinterpret the requirement that false statements be "published." For all three of the torts at issue in Count Five, a statement need only be communicated to a third party for it to be considered published, and thus the Court will not dismiss Plaintiff's claims on this basis. *See, e.g., D'Agostino v. Musical Heritage Soc.*, No. 3480-12T2, 2015 WL 5090862, at *11 (N.J. Super. Ct. App. Div. Aug. 20, 2015) (explaining the elements of defamation); *Patel v. Soriano*, 369 N.J. Super. 192, 247 (App. Div. 2004) (explaining the elements of commercial disparagement); *Van v. Atl. Health Sys.*, No. 17-4254, 2018 WL 11452543, at *6 (D.N.J. Nov. 1, 2018) (explaining the elements of false light).

### 1. *Defamation*

The Court turns first to Plaintiff's defamation claim. In order to state a claim for defamation in New Jersey, a plaintiff must establish that: "(1) a false statement was made concerning [the plaintiff]; (2) the statement was published to a third party and not otherwise privileged; (3) the publisher was at least negligent in publishing the statement; and (4) damages." *Robles v. U.S. Envt. Universal Serv., Inc.*, 469 Fed.Appx. 104, 109 (3d Cir. 2012) (citing *DeAngelis v. Hill*, 180 N.J. 1 (2004)). "A defamatory statement, generally, is one that subjects an individual to contempt or ridicule, one that harms a person's reputation by lowering the community's estimation of him or

by deterring others from wanting to associate or deal with him." *G.D. v. Kenny*, 205 N.J. 275, 293 (2011) (citations omitted); *see also* Restatement (Second) of Torts § 559 (defining a defamatory statement as one that "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.") "To determine if a statement has a defamatory meaning, courts look "to the fair and natural meaning [to be given to the statements] by reasonable persons of ordinary intelligence." *Romaine v. Kallinger*, 109 N.J. 282, 290, 537 A.2d 284 (1988). Vague conclusory allegations are insufficient to plausibly plead defamation. *Chun v. Sushi Maru Express Corp.*, No. 17-6411, 2018 WL 3158815, at *5 (D.N.J. June 28, 2018) (citing *Zoneraich v. Overlook Hosp.*, 212 N.J. Super. 83, 101 (App. Div. 1986)).

Defendants argue that they indeed told Mr. Miller that Plaintiff owes Defendants money. (ECF No. 38 at 17.) However, Defendants contend that the statement was not defamatory because it was truthful. (*Id.*) Defendants further argue that they did not make the other alleged statements and that they do not know the individuals to whom Plaintiff refers. (*Id.*) Finally, Defendants argue that, even if they did make each of the alleged statements, each should be characterized as an opinion and therefore immune from defamation claims. (*Id.* at 18.)

First, the Court declines Defendants' invitation to accept their version of events, rather than Plaintiff's. On a Rule 12(c) motion, the Court must accept all well-pleaded factual allegations in Plaintiff's Second Amended Complaint as true and draw all reasonable inferences in favor of Plaintiff. *Phillips*, 515 F.3d at 231; *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d at 406. It is not for the Court to decide at this stage whether Plaintiff in fact owed Defendants money, whether Defendants made the alleged statements, or whether Defendants know the people to whom Plaintiff refers. The Court is only empowered to determine whether Plaintiff's allegations, accepted as true, state a claim for defamation.

Nonetheless, the Court finds that the Second Amended Complaint fails to state a claim for defamation because Plaintiff fails to plead any facts purporting to show that Plaintiff was subjected to contempt or ridicule, that his reputation was harmed, or that others were deterred from seeking to deal with him. To survive a Rule 12(c) motion, Plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Plaintiff alleges that Defendants' statements "were made to defame [Plaintiff], lower him in the eyes of Mr. Miller and the standardbred racing community and convince Mr. Miller not to train the plaintiff's horses." (SAC, at 29). Plaintiff recites the exact same allegation with respect to Mr. Hall: he alleges that Defendants' statements "were made to defame the plaintiff, lower him in the eyes of Mr. Hall and the standardbred racing community and convince Mr. Hall not to train the plaintiff's horses." (*Id.*) Likewise for Dr. Blauner and for the Harrah's Casino judge. (*Id.* at 30.) This kind of conclusory recitation of the legal elements is insufficient. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citation omitted)).

Moreover, with respect to the Harrah's Casino judge, Plaintiff fails to allege to whom the statement was made, merely indicating that it was made to an unnamed judge affiliated with Harrah's. *See Chun*, 2018 WL 3158815, at *5 (granting defendants' motion to dismiss because plaintiff did not plausibly allege when or to whom the alleged statement was made). And while Plaintiff identifies other recipients of Defendants' allegedly defamatory statements, including Mr. Miller, Mr. Hall, and Dr. Blauner,[14] Plaintiff does not allege when those statements were made. *Id.*; *see also Alexander v. Hackensack Meridian Health*, No. 19-18287, 2020 WL 5810526, at *10 (D.N.J. Sept. 30, 2020) (dismissing plaintiffs' defamation claim for, *inter alia*, failing to allege

---

[14] The Second Amended Complaint does not include Dr. Blauner's first name.

when the statement was made). Accordingly, the Court finds that Plaintiff has failed to state a claim for defamation.

## 2. *Commercial Disparagement*

Plaintiff alleges, in the alternative, that Defendants' purported false statements constitute commercial disparagement (also known as trade libel). Defendants argue that Plaintiffs' claim for commercial disparagement fails because the alleged statements, even if made, do not pertain to Plaintiff's property or business as Plaintiff does not allege that he owns any type of business. (ECF No. 38 at 19.)

"A plaintiff alleging trade libel must prove publication of a matter derogatory to the plaintiff's property or business, of a kind designed to prevent others from dealing with him or otherwise to interfere with plaintiff's relations with others." *Patel v. Soriano*, 369 N.J. Super. at 247 (citing Prosser & Keeton on Torts § 128 at 967 (5th ed. 1984)); *see also Sys. Operations, Inc. v. Sci. Games Dev. Corp.*, 555 F.2d 1131, 1140 (3d Cir. 1977). "The communication must be made to a third person and must play a material part in inducing others not to deal with plaintiff." *Id.* (citations omitted).

In an action for trade libel, a plaintiff must "plead and prove special damages with particularity." *Intervet, Inc. v. Mileutis, Ltd.*, No. 15-1371, 2016 WL 740267, at *6 (D.N.J. Feb. 24, 2016) (quoting *Mayflower Transit, LLC v. Prince*, 314 F. Supp. 2d 362, 378 (D.N.J. 2004)). This requires that a plaintiff "allege either the loss of particular customers by name, or a general diminution in its business, and extrinsic facts showing that such special damages were the natural and direct result of the false publication." *Id.* (quoting *Mayflower Transit*, 314 F. Supp. 2d at 378); *see also Patel*, 369 N.J. Super. at 247 (plaintiff must prove "special damages," and the "necessary showing is specific: plaintiff must establish pecuniary loss that has been realized or liquidated such

as lost sales, or the loss of prospective contracts with customers.") "When predicating a damages claim on the general diminution in business, Plaintiff must prove 'facts showing an established business, the amount of sales for a substantial period preceding publication, the amount of sales for a [period] subsequent to the publication, facts showing that such loss in sales were the natural and probable result of such publication, and facts showing the plaintiff could not allege the names of particular customers who withdrew or withheld their custom.'" *Gillon v. Bernstein*, 218 F. Supp. 3d 285, 299 (D.N.J. 2016). "General, implied, or presumed damages of the kind available in personal defamation actions do not satisfy the requirement of special damages needed for disparagement causes of action." *Patel*, 369 N.J. Super. at 249.

The Court finds that Plaintiff has not pled special damages with sufficient particularity to survive Defendants' 12(c) Motion. Plaintiff claims that Defendants' alleged statements lowered him in the eyes of trainers, Mr. Miller and Mr. Hall, and that, as a result, Plaintiff had to "increase the training compensation." (SAC, at 29–30.) As for Dr. Blauner, Plaintiff alleges that he "cannot obtain veterinary services from the veterinarian contacted by [Defendants]." (*Id.* at 30.) Plaintiff further alleges that he has "suffered direct harm, including but not limited to emotional distress and pecuniary harm." (*Id.* at 31.)

First, Plaintiff's emotional distress damages are "strictly excluded" as a recovery for commercial disparagement claims. *Patel*, 369 N.J. Super. at 253 ("Recovery for emotional distress under this cause of action is barred.") Second, the Court finds that Plaintiff has not plead pecuniary harm with sufficient particularity. Plaintiff seems to be alleging that his relationships with Mr. Miller, Mr. Hall, and Dr. Blauner were either lost or damaged as a result of Defendants' statements.[15] However, courts in New Jersey require plaintiffs not only to allege the loss of

---

[15] Furthermore, Plaintiff has not alleged the loss of any relationship with Harrah's Casino as a result of Defendants' alleged false statements made to unnamed judge affiliated with same.

particular customers by name but also allege extrinsic facts showing that such special damages were the natural and direct result of the defendants' false statements. Plaintiff has alleged no such facts. Moreover, to the extent that Plaintiff is attempting to allege a general diminution in business based on the devaluation of his horses, he has also failed to plead these damages with particularity as he has not showed an established business, his earnings for a substantial period preceding the alleged statements, his earnings for a period subsequent to the alleged statements, and that his loss in earnings were the natural and probable result of the alleged derogatory statements. Accordingly, Plaintiff's Second Amended Complaint fails to adequately allege commercial disparagement.

### 3.  *False Light*

Finally, Plaintiff also alleges, in the alternative, that Defendants' statements amount to the tort of false light. Defendants argue that Plaintiffs' claim for false light fails because the alleged statements, even if made, would not be highly offensive to a reasonable person. (ECF No. 38 at 18–19.) "New Jersey recognizes a privacy tort when '[a defendant] gives publicity to a matter concerning another that places the other before the public in a false light.'" *G.D*, 205 N.J. at 307 (2011) (quoting *Romaine v. Kallinger*, 109 N.J. 282, 294 (1988)). "A defendant 'gives publicity to a matter' by 'communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'" *Van*, 2018 WL 11452543, at *6 (quoting *Dzwonar v. McDevitt*, 348 N.J. Super. 164, 177 (App. Div. 2002), *aff'd*, 177 N.J. 451 (2003) (citation omitted)). "However, a defendant does not 'give publicity to a matter' simply by 'communicat[ing] a fact concerning the plaintiff's private life to a single person or even to a small group of persons.'" *Id.* (quoting *Dzwonar*, 348 N.J. Super. at 177).

Plaintiff's allegations only involve supposed representations made to four people: Mr. Miller, Mr. Hall, Dr. Blauner, and the unnamed Harrah's Casino judge. While not expressly argued

by Defendants, the Court finds that Plaintiff's allegations are insufficient to demonstrate that the allegedly false facts communicated about Plaintiff became public knowledge. Thus, as with Plaintiff's defamation and commercial disparagement claims, Plaintiff's false light claim must fail. Accordingly, Defendants' Motion is **GRANTED** without prejudice as to Count Five.

### E.  Claim for Tortious Interference

In Count Six, Plaintiff states a claim for tortious interference. Plaintiff alleges that Defendants "interfered with one or more contracts between Plaintiff and one or more third parties, including, but not limited to the above listed trainers and prospective trainers and Dr. Blauner." (SAC, at 32.) Plaintiff alleges that Defendants' interference was "intentional" and "without justification." (*Id.*) Plaintiff alleges that, as a result, his training bills increased and he lost his relationship with one of his veterinarians. (*Id.* at 33.) Defendants argue that Plaintiff's claim must be dismissed because Plaintiff "fails to plead the existence of a contractual relationships or attach a copy of these alleged contracts to his Second Amended Complaint." (ECF No. 38 at 19–20.) Moreover, Defendants argue that Plaintiff fails to allege the interference was malicious, that he lost a contract, or that a contract was breached as a result of the alleged interference and fails to adequately allege any damages resulting from the alleged interference. (*Id.* at 20.)

To state a claim for tortious interference with prospective economic advantage, a plaintiff must allege "(1) [the] plaintiff's reasonable expectation of economic benefit or advantage, (2) the defendant's knowledge of that expectancy, (3) the defendant's wrongful, intentional interference with that expectancy, (4) in the absence of interference, the reasonable probability that the plaintiff would have received the anticipated economic benefit, and (5) damages resulting from the defendant's interference." *Fineman v. Armstrong World Industries, Inc.*, 980 F.2d 171, 186 (3d Cir. 1992) (citing *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 751–52 (1989)). In order to demonstrate that the interference was intentional, a plaintiff must allege that

the tort was done with malice: namely, that the "harm was inflected intentionally and without justification or excuse." *Printing Mart-Morristown*, 116 N.J. at 751. In order to state a claim for tortious interference with contractual relations, plaintiff must further allege "an existing contract." *Carpet Grp. Int'l v. Oriental Rug Importers Ass'n, Inc.*, 256 F. Supp. 2d 249, 288 (D.N.J. 2003).

In Plaintiff's Response, Plaintiff indicates that he is only bringing a claim related to interference with *prospective* economic relations—not *existing* contractual relations.[16] Even so, Plaintiff's formulaic recitation of the elements of this tort do not suffice. Plaintiff alleges merely that Defendants interfered with "one or more contracts between Plaintiff and one or more third parties," that Defendants' interference was intentional, and that the interference was without justification. Plaintiff provides no facts to bolster these conclusory allegations. Defendants' Motion is therefore **GRANTED** without prejudice as to Count Six.

### F. Leave to File a Third Amended Complaint

Having addressed each of Plaintiff's claims, the Court will briefly address Defendants' request that Plaintiff's claims be dismissed with prejudice. In his Response to Defendants' Motion for Judgment on the Pleadings, Plaintiff asks that he be permitted to amend his Second Amended Complaint to cure any deficiencies identified by the Court in ruling on Defendants' Motion. (ECF No. 43 at 39.) Plaintiff argues that justice requires that he be permitted to file an amended pleading because he was *pro se* at nearly all relevant stages of this litigation. Defendants object to Plaintiff's request. (ECF No. 58 at 11.) Defendants contest whether Plaintiff is, in fact, *pro se*, and argue that "he should not be permitted to amend for a third time on the basis of his alleged status as a 'pro

---

[16] If Plaintiff was attempting to state a claim for tortious interference with contractual relations, that claim would fail because Plaintiff has not alleged the existence of a contract. *Carpet Grp. Int'l v. Oriental Rug Importers Ass'n, Inc.*, 256 F. Supp. 2d 249, 288 (D.N.J. 2003) ("the tortious interference with contractual relations claim requires proof of an existing contract"); *Ingris v. Drexler*, No. 14-2404, 2015 WL 1472657, at *5 (D.N.J. Mar. 30, 2015) ("Plaintiff has not stated a claim for interference with contractual relations because he has not alleged the existence of a contract.").

se' litigant." (*Id.* at 12.) As the Court noted above, Plaintiff's representation that he filed the Second Amended Complaint as a *pro se* litigant appears to be inaccurate. However, the Court nonetheless finds it unnecessary to resolve this dispute, as the Court's outcome would be unchanged: regardless of whether Plaintiff is *pro se*, the Court would permit Plaintiff to submit an amended pleading.

The Third Circuit has held that district courts may dismiss claims with prejudice where amendment would be "inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *see also Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." (citations omitted)). With respect to Plaintiff's NJCFA claim in Count Three, the Court finds dismissal with prejudice appropriate because amendment of this claim would be futile. As noted above, consumer fraud claims are not cognizable against the named Defendants.

However, although Plaintiff's remaining claims in Counts Two, Four, Five, and Six are wanting and vague, in an abundance of caution, the Court grants Plaintiff leave to amend these claims. *See Kundratic v. Thomas*, 407 F. App'x 625, 629 (3d Cir. 2011) (counseling that leave to amend should be given where the basis for dismissal is a lack of factual specificity). Nonetheless, the Court points out that Plaintiff has previously twice amended his Complaint, and it appears as though Plaintiff has had the benefit of counsel, at least for a portion of this litigation. The Court is also cognizant of the fact that this case has been pending since May 2022. Accordingly, Plaintiff's amended pleading must be filed within thirty (30) days. Failure to file a Third Amended Complaint within the allotted time will result in dismissal of Counts Two, Four, Five, and Six with prejudice.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, Defendants' Motion for Judgment on the Pleadings, (ECF No. 38), is **GRANTED** in part and **DENIED** in part. Defendants' Motion is **DENIED** as to Plaintiff's malpractice claim in Count One. However, Defendants' Motion is **GRANTED** as to Plaintiff's claims in Counts Two, Three, Four, Five, and Six. Plaintiff's claims in Counts Two, Four, Five, and Six are **DISMISSED** without prejudice, while Plaintiff's NJCFA claim in Count Three is **DISMISSED** with prejudice. An appropriate Order accompanies this opinion. Plaintiff may file an amended pleading that cures the deficiencies identified in this Opinion within thirty (30) days of the date of this Opinion and accompanying Order. Failure to file a Third Amended Complaint within thirty (30) days will result in dismissal of Counts Two, Four, Five, and Six with prejudice.

 

_____

ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

<u>Dated</u>: November 15, 2023